For 22-5006, 22-5006 U.S. v. Kepler, Ms. Chen. Good morning, your honors and may it please the court, my name is Kathleen Chen and I represent the appellate, Mr. Shannon Kepler. Shannon Kepler's 924J conviction should be vacated because it is invalid as a matter of law. Contrary to the conclusion reached by the district court, second degree murder, as it's been interpreted in this circuit, does not require any conscious targeting of the victim and it does not have as an element the use of force required by 924C. So this court, of course, is not writing on a blank slate. The categorical approach determines whether an offense is a crime or violence for purposes of 924C and J, and so we're not looking to the facts of this particular case but focusing solely on the question of whether this crime necessarily satisfies the federal standard. And of course, if any act criminalized, including the least culpable, does not meet that standard, the offense as a whole does not qualify. And in Morgan, the Supreme Court made it clear that an offense satisfies the elements clause only if it requires the perpetrator to direct his action at or target another individual in a conscious and volitional manner. So a driver who deliberately trains his car to pedestrian, a reviled neighbor, knowing that he will run him over has used violent force, as has a driver who sees a pedestrian in his way and decides to drive forward anyway, understanding he's going to hit him. What if it's a group of pedestrians? You know, I think that is a closer question, but I want to sort of put that aside because, you know, just the Supreme Court also said a driver who carelessly decides to run a red light and is just disregarded or risked that he's going to hit someone who has not used force. Now, the government, in its answer brief, talks about this scenario of like, well, what if you see an intersection crowded with pedestrians and you just zoom through? That, I think, is a harder question as to whether knowing and taking on that degree of risk is the use of force, but that's just not what this law in this circuit requires. In this circuit, a careless driver who has not trained his car in order, understanding he will hit him, but only if paid insufficient attention to the potential application of force can be charged with and convicted of second-degree murder so long as he has some kind of prior sentation or even arrest for reckless driving or even driving without a license. And so in Merritt, for example, there the defendant was convicted of second-degree murder for a drunk driving offense that occurred in the U-Belt Reservation in southwest Colorado near the Utah border. He was drunk, drifted into the wrong lane, and collided with another vehicle. He didn't consciously target the other vehicle. There's no evidence he even saw the other vehicle or knew his victims existed. Instead, the government relied on his prior DUI arrest to show that he knew that his conduct posed a serious risk of death or harm to himself or others, but that he did not care. That is, it relied on evidence that he paid insufficient attention to the potential application of force, which is conduct that falls clearly short of the line that the existing court drew up importing. And these cases all come back to this court's decision in Cannes, where the defendant was driving on an avenue in Indian Reservation when he collided with and killed a motorcyclist. He had a, you know, he had a VA, so he was well above the limit and had numerous prior convictions for DUI. But notably, as this court emphasized in the decision, there was nothing about the way he was driving that made it particularly reckless. And it was, in fact, this absence of evidence that he was driving in an especially reckless manner that led the court to conclude that, of course, you can rely on his prior DUIs to show that he's a particularly blameworthy and a particularly culpable individual. Well, could one draw a distinction in that case between whether the defendant's previous drunk driving is probative of malice as opposed to whether the defendant's previous drunk driving is sufficient to show malice? So I take that you're asking, you know, this is an evidentiary decision. But I think the facts of Cannes and subsequent cases confirm that in this court and in this circuit, drunk driving can be second-degree murder if he was priors. You don't have to prove, provide any evidence that the driving itself is especially reckless. You don't have to show, for example, I think in Cannes, the site to the Fourth Circuit case, Fleming. And I think those facts are very instructive. In Fleming, the defendant drove 100 miles an hour down the George Washington Parkway, which is a busy urban highway, at 3 p.m. in the afternoon, leaving in and out of traffic. Now, that is a degree of danger that simply is not present in cases like Merritt and Tann. And Tann makes that clear. Tann says there's nothing about the way this guy is driving that tells us that he's driving in an especially reckless manner. But it's because of that that this government can rely on his priors to prove that he acted with malice. Could I just – you said this circuit, and I wanted to ask you whether you're arguing that the mens rea requirement for depraved heart second-degree murder is different in the Tenth Circuit than it is in some of the other circuits. I think it could be. And I think that's – the government is citing these other circuits where they've held, for example, Puerto Rico second-degree murder is a crime of violence, where they've held that Kentucky complicity in murder is a crime of violence, where Virginia second-degree murder is a crime of violence. But, of course, what other jurisdictions and how other jurisdictions define those offenses isn't binding on the circuit. Are you saying that depraved heart second-degree murder is not a crime of violence? Are you saying, yes, it may be a crime of violence, but the way we've defined depraved heart murder in this circuit is not? I'm saying that you don't have to reach the question of whether depraved heart murder generally is a crime of violence, because if you look at the cases in this circuit, it's clear that all that is required to be convicted of second-degree murder is reckless driving, when that reckless driving is combined with prior arrests, convictions, even for driving without a license, that show that you knew that it was – you had a special reason to know better than others that it's dangerous to drink and drive. But, again, even that the way that this court describes malice for purpose of second-degree murder has nothing to do with whether the person directed his conduct at or targeted his victim. It's very different. That's true of depraved heart murder in general, is it not? You know, I don't think that's necessarily the case, because, you know, the – I'm kind of – I think Judge Matheson was asking about, is it that you're saying – do you think the way that depraved heart secondary murder is instructed in this circuit is wrong? In this circuit, the instruction in this case was malice requires callous and wanton disregard for human life. And that's a common definition or formulation of depraved heart murder. Sure, but if you look beyond that and look at the cases that this court has confirmed constitute second-degree murder, it's clear that there is no conscious targeting of the victim. Well, didn't we just say – isn't it always said in those cases that the evidence was sufficient to support a conviction under that instruction? Yes, and the evidence that this court has found sufficient clearly falls short of what warning requires. Well, we talked a lot about Sarawak in the previous argument. One part of that case gives definition of depraved heart recklessness and says, and I'm quoting, that it involves conduct for which a jury is warranted in inferring that the defendant was aware of a serious risk of death or serious bodily harm. Doesn't that go beyond what the court in Borden was talking about? Borden talked about the need for some aiming by the defendant. And it seems that the jury can infer that the defendant was aware of a serious risk of death or serious bodily harm. Why doesn't that take you beyond Borden, which, by the way, said it wasn't addressing depraved heart? Recklessness. So I have a couple of responses to that. So first, we know that this court is only looking for generalized risk and not a risk specific to a specific person, which I think, you know, to go back to what Your Honor mentioned earlier, driving through a crowded intersection. Yeah. Where you know there's a very high risk. Sorry to interrupt, but maybe just put a finer point on that. Does the aiming have to be at the specific victim in the case, or does it just have to be aimed at a human? I think it has to be aimed at the victim in the case, and I think that comes from Borden. I don't know how you could target someone that's not a victim. Targeted implies specificity. And I think Borden is clear that what's required is the targeting of a specific person. And this court's language and this court's cases show that's simply not required. Now, recall that in Barrett. Well, how would you then – it seems the most developed out-of-circuit case on this issue is Begay out of the Ninth Circuit. There, the majority, I think, does take the position that as long as the reckless and wanted conduct is aimed at a person, not necessarily the specific victim, but a person, that that was enough. Now, am I misreading Begay, or is that what they said? So I think Begay does say that, and they also rely on Ninth Circuit cases that say there has to be a very high risk to a person. And I still think a means a specific person. I'm not sure how you get beyond that. And notably in Begay, the cases they rely on talk about second-degree murder as being limited to, like, shooting into a crowded room, driving down a crowded intersection. And that's simply not the level of risk that this court has required. Of course, driving drunk on a rural road in southwest Colorado just does not present the same level of risk that shooting into a crowded room or speeding the wrong way down the door to Washington Parkway does. Is it the amount of risk or the state of mind? Given his prior experience in causing serious accidents when he was drunk, it shows that he just doesn't care about human life, and he's going to go ahead and drive drunk on that road. Maybe it'll be 10 times before he kills somebody, but he just doesn't give a damn whether he kills someone. So it's not what the risk is. It's the state of mind of the defendant. Is that not a distinction? I think that your recidivist reckless driving is highly culpable for the reason that you talk about. But it does not mean it's been required and aborted, where the examples given by the Supreme Court require targeting, and they talk about seeing somebody and going for it. It requires more than recklessness. And at some point, can't you say that given this person's history and experience and knowledge of what's going to happen, that his state of mind is more culpable than standard recklessness? You can say his state of mind is more culpable, but it's not merely culpability, which determines whether something is a crime or violence. The Supreme Court has emphasized reckless driving, vehicular homicide. These are offenses that are highly culpable that do harm people, but they are not violent crimes. The Supreme Court confirmed that in Borden. And also, I'd like to quibble with the examples you've given, because in Merritt, he had prior arrest for drunk driving. He had never had an accident or killed someone before. In Leonard, the defendant had prior citations for driving without a license. So, it's not a case that this is someone who's driven before and killed someone and done it again. These are simply prior citations, which this court put the defendant on notice, and his comment presented as a great risk of harm to himself or others. And I'd also note, this language, to himself or others, shows that this is a generalized risk of harm. It's not about a risk to a specific person. I just think the fact that you could be convicted based on your indifference to the risk of harm to yourself shows that this is very far outside of what Borden is contemplating. And again, to go back to Begay, one of the things that Begay emphasizes is that vehicular homicides being charged as second-degree murder are going to be exceptionally rare. It's only the wildest cases. And again, they cite the Fleming case that I've described earlier, speeding down a crowded highway outside Washington, D.C. And that is just, again, a degree of risk that is not present in these cases. In this circuit, ordinary reckless driving that results in death can and is frequently prosecuted as second-degree murder, so long as the person has prior citations, even for driving without a license. And so, the distinction that the Begay court makes and the Baez-Martinez court makes, which says that, oh, those are exceptionally rare. But your focus is on degree of risk is what's the important thing, not the state of mind. Please. I'm sorry. Please. I apologize. No. You've been focusing on the degree of risk as opposed to the degree of evilness in the person's mind. And isn't it the evilness in the person's mind that the Supreme Court is concerned about? At some point, it's not intent, but it's close enough to make it a crime of violence. I think Gordon forecloses that. Gordon says it's not about the degree of risk. It's about conscious and volitional targeting of another. And it's not about what we consider wrong or blameworthy. It's about whether this is a violent crime. So, Justice Kavanaugh misinterpreted the majority opinion. The majority opinion says what it says. Well, there was no majority opinion. Well, I think Justice Thomas' opinion is that use also requires conscious targeting and knowledge and purpose. And so if you add Justice Thomas to the other four, that is what the whole thing of Gordon is, is that there has to be conscious targeting of the victim, and that's not what's required in this circuit. Thank you. Make way for the court. Bring her along for the announcement. Ms. Shen is wrong that this court's precedent sets a different standard for depraved heart recklessness than any other circuit. Neither the Tan nor the Leonard case she cites define what standard this court requires to convict a defendant of depraved heart second-degree murder for several reasons. First, as Judge Matheson observed, these are 404B cases. They go to whether evidence of depraved heart recklessness in the past can be used to show the defendant's mens rea in this case. Second, and probably most importantly, neither Tan nor Leonard concerns what quantum of evidence is required to show depraved heart recklessness to obtain a conviction for second-degree murder. This is because Tan was an interlocutory appeal, and to the extent that the court in Tan opines about what the evidence might show below, it was doing so in advance of a trial. It was just considering whether evidence of the defendant's prior drunk driving episodes was probative of the defendant's mens rea in the instant case where he did hit the victim. And in Leonard, in fact, the jury acquitted Mr. Leonard of second-degree murder and convicted him of involuntary manslaughter. So neither of those cases defines what the standard in this court is for depraved heart recklessness. Well, let me just ask. It seems to me that we have Borden talking about recklessness. And they said, we're not going to resolve the depraved heart issue. And then, of course, on the continuum, you go recklessness, depraved heart, recklessness, intent. So we're in this space between recklessness and intent. And I take it it's the government's burden then on the 924C issue to show that all depraved heart murders meet the elements clause. So how have you done that? For the same reason the 1st, 4th, 6th, 9th, and 11th circuits have held, where a depraved heart recklessness requires that a defendant evinces such extreme recklessness that it shows a disregard for human life. The question is whether that degree of recklessness shows or fairly employs the use of force against the person or property of another. And as those courts have all held, when a defendant is so reckless as to evince a disregard for human life, that it necessarily correlates to a degree of force against the person of another. And this sort of highlights the primary disagreement between myself and Ms. Shen on this issue, which is that the government's position, as the Ombudsman circuit held in Begay and as the 1st circuit held in Valles-Martinez, this is not—whether force is employed doesn't mean the defendant must employ force against the specific victim in his case. The question about the mens rea is whether that recklessness was sufficient to show a disregard for human life, force against a person, not a specific person, but people. And this is what brings us to the hypothetical— So we're really comparing the second-degree murder statute with the 924C, and we've got to look at the two of them together. And when you're talking about targeting a specific victim as opposed to a human, there we're talking about the second-degree murder statute, correct? Yes. Okay. And how do we get to your position that it doesn't require that the mens rea or the targeting or the aiming, whatever we're calling it, it doesn't have to be tied to the specific victim? How do you get there? Again, as I think Begay and Valles-Martinez explained, where the extreme recklessness is such that it's targeted, that it evinces a disregard for human life, where there are numerous potential victims, the 924C does not require that the defendant employ that force at a specific victim, but at people generally. And not writ large, but as the example in those cases goes, where a defendant's extreme recklessness puts in danger through his use of force a group of people, the fact that he doesn't identify a specific victim, that it doesn't amount to intent to hit that one pedestrian in the crosswalk, that does not mitigate his intent so much that we're talking about garden-variety recklessness. And in fact, that goes to the Leonard case, right, where a defendant may have hit someone and may have acted recklessly, but where that recklessness was not sufficient to meet the extreme, depraved heart recklessness of second-degree murder, that would not qualify as a crime of violence. But in a case where the defendant's conduct and their recklessness is so extreme as to constitute second-degree murder, then it may fairly be correlated to an intent to at least purpose something more than garden-variety recklessness to employ the use of force against people and potential victims. And it's the phrase, I think, potential victims appears in both Baez Martinez and Begay, and that really is the focus. And the difference between Borden, where recklessness generally isn't enough to show the employment of force against potential victims, but depraved heart recklessness, because it requires the showing of indifference towards human life, does contemplate potential victims, i.e., the use of force against people or a person. I'd like to address just briefly the imperfect self-defense issue that was discussed in Sago. The arguments on the first two prongs of plain error are identical here. The argument on the third prong of plain error on imperfect self-defense, or the malice instruction, differs slightly here, because Mr. Koeppler explicitly, when he took the stand, declined, was asked if he was saying that this was a heat of passion case. And the prosecutor asked him, this isn't a case where you're saying you were angry or you were acting in a heat of passion. And Mr. Koeppler said, no. He said, and this isn't a case where you're saying you were mistaken about the defendant having a gun. And Mr. Koeppler says, no. I don't remember how the question came up. But then he says, so you're 100% certain that the victim, Jeremy Lake, was pointing a specific firearm at you. And Mr. Koeppler said, 100% certain, yes. And so, to the extent that Mr. Koeppler now wants to come before this court and suggest that he was raising an imperfect self-defense argument, this court cannot find that any error in giving the malice instruction that he now seeks affected his substantial rights, because Mr. Koeppler specifically disavowed an imperfect self-defense argument. And when he testified that the victim pointed a specific silver semi-automatic firearm at him, and the jury found Mr. Koeppler guilty of the 924J violation, the jury necessarily rejected Mr. Koeppler's testimony that he was engaging in imperfect, not imperfect self-defense. If the court has no further questions, I'll see you the rest of the time. Thank you, counsel. Thank you, both counsel. Case is submitted.